10358.  BELL, administrator, *v.* STATE LIFE INSURANCE
COMPANY OF INDIANAPOLIS.

1. In an action to recover under a policy of accident insurance, it is incumbent upon the plaintiff to prove the accidental character of the injury as laid in his petition.  *Travelers Insurance Co.* v. *Newsome,* 147 *Ga.* 608 (95 S. E. 4).
2. Under the evidence in this case the jury would have been authorized to find that the preponderance of the testimony established the plaintiff's contention that the fatal infection originated at the place upon the ear where the accidental abrasion had occurred.  If, therefore, the direction of the verdict in favor of the defendant had been based upon the contrary theory, that it must have originated in the throat, as contended for by the defendant, such action would not have been justified.
3. Where the evidence shows either that an infection occurred at the time an accidental wound was received, or that it followed as a natural and ordinary consequence, the death ensuing from such injury and infection can properly be accounted as accidental within the meaning of the terms of the policy herein quoted.
4. If, however, one who has knowingly sustained an accidental abrasion upon the exposed surface of his body nevertheless thereafter continues to bring himself in contact with and to treat a patient affected with a virulent type of contagious disease such as is capable of being transmitted through immediate proximity with such exposed wound or abrasion, and as a result of such voluntary risk he thus becomes infected with and contracts the disease, and it results in his death, the proximate cause thereof can not properly be said to be the original "bodily injury sustained and effected directly through external, violent and accidental means, exclusively and independently of all other causes." *Southern Railway Co.* v. *Webb,* 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109).
5. All pleadings must receive a construction in accordance with the natural intendment of the words and language used, and, as a general rule, must be construed most strongly against the pleader (*Athens Mfg. Co.* v. *Rucker,* 80 *Ga.* 291 (4 S. E. 885); but if a petition be subject to two constructions, and there be no demurrer thereto, and the case has proceeded to trial and resulted in a verdict, then, in determining whether the case has been proved as laid, that construction will be adopted which is most favorable to the assertion of a cause of action in the plaintiff's favor.  *Payton* v. *Gulf Line Ry. Co.,* 4 *Ga. App.* 762 (62 S. E. 469).
(*a*) Construing the petition in this case in accordance with the natural meaning of the language used, its allegations to the effect that the deceased, "*while attending*" an erysipelas patient, accidentally scratched his ear in adjusting his glasses, and the scratch "*became*" infected with the germ of the disease, would seem necessarily to mean that the wound or scratch occurred while the decedent was attending his patient, and that by reason of such exposure to the patient it then and there became infected.  Giving the petition what seems to be the only reasonable and

32

proper construction, the evidence adduced upon the trial entirely fails to sustain the case as laid, since from the plaintiff's own evidence it is shown that the abrasion upon the ear occurred at the office of the assured in the city of Atlanta, whereas the erysipelas patient was a resident of another and neighboring city. If the infection occurred as a consequence of the voluntary act of the assured in thereafter subjecting the wound or abrasion to such a serious and dangerous exposure, then, under the ruling made in the preceding paragraph, the defendant would not be liable.

(*b*) But even were it possible to give to the petition the construction contended for in the brief of plaintiff's attorneys,—that is, that the assured contracted the disease from his infected glasses in the very act and at the same time the accidental abrasion upon the ear occurred,—there is absolutely no evidence of any character from which it could possibly be said that the plaintiff has carried the burden thus imposed upon him, since it is disclosed by his own evidence that the infection might have easily originated at the point of the abrasion in another and different way, namely, by the subsequent voluntary exposure of the wound to the disease germs, and there being no evidence of any character which could possibly tend to show to the satisfaction of the jury which of these two reasonable theories, both presented by the plaintiff's evidence, was in fact the more probable. *Georgia Ry. & El. Co.* v. *Harris,* 1 *Ga. App.* 714 (57 S. E. 1076); *Carroll* v. *Atlanta Paper Co.,* 7 *Ga. App.* 584 (67 S. E. 680).

DECIDED NOVEMBER 26, 1919. REHEARING DENIED DECEMBER 10, 1919.

(Certiorari granted by the Supreme Court.)

Action on insurance policy; from Fulton superior court—Judge Pendleton. January 14, 1919.

This was a suit on a policy of life-insurance for the recovery of the disputed double indemnity provided for under one of its clauses and which was to be paid in all cases where it should be shown that the death of the assured resulted from "bodily injury sustained and effected directly through external, violent, and accidental means, exclusively and independently of all other causes." The petition (which was not demurred to) alleged that "the insured was a physician by profession, and on or about May 3, 1916, he began to attend professionally the infant child of one T. M. Robinson of East Point, Georgia, said child suffering from the disease known as erysipelas. Insured wore glasses, and while attending his said patient the insured, in adjusting his glasses, accidentally caused a scratch or abrasion of the skin on or near his right ear, which scratch or abrasion of the skin became infected with the germs of the disease of erysipelas, same developing in the insured on or about May 20th. As a result the insured died, as above stated, on June 17, 1916."

The undisputed evidence submitted by the plaintiff at the trial was to the effect that the abrasion caused by the glasses occurred on May 14, 1916, at the office of the deceased in the Candler building in the city of Atlanta; that he commented upon the occurrence at the time, and that he thereafter continued to treat and come in immediate contact with the patient affected with erysipelas, who was living out from College Park about two miles, on the Fairburn car-line, until the 23d day of May. The evidence itself as adduced from the plaintiff's witnesses, and the deductions which might be drawn therefrom, were conflicting as to whether the erysipelas from which the assured died originated from within the throat, or at the point of abrasion on the ear. T. M. Robinson, plaintiff's witness, swore that on Sunday before the death of his child, which occurred on Wednesday, May 24, Dr. Bell, the deceased, called at his house and was complaining of sore throat; that at that time he did not notice any sign of erysipelas upon Dr. Bell's ear, and that Dr. Bell at that time complained only of a sore throat, and that is what he said he had,—a sore throat. On the other hand another witness for the plaintiff, Miss Pearl Nash, testified that on Friday, May 19, she attended a moving-picture show with Dr. Bell, the assured, and that on this occasion she noticed the red and irritable condition of his ear, whereupon they stopped by a drug store and applied to it a healing salve.

Dr. Cosby Swanson, sworn for plaintiff, testified as follows: "I am a physician and practice at 929 Candler building, here in Atlanta. I knew Dr. Bell in his lifetime. I was called to see him about three or four days after he contracted the disease from which he died. My specialty is that of skin diseases. When I was called in to attend Dr. Bell I found that he had a red inflamed patch on the right side of his face and his right ear, extending down a little bit on the neck, and back of his ear. I examined the inflammation as a whole, but I didn't go into minute details. I saw him three or four days after he contracted it, and there was a large area inflamed when I saw him, which was on the right ear and right side of his face. As to locating the center of it, one part was as much inflamed as the other, when I looked at him. Erysipelas is a contagious, infectious disease, and usually comes from somebody else that has the disease, or sometimes from some patient that they have been handling with that disease. It is

characterized by swelling, redness, and some pain, and with a sharp line or demarcation, with an elevation of temperature, and the best authorities, I might state, state that it is most apt to be from an abrasion of the skin or mucous membrane before contracting the disease, through the abrasion may be very slight, and the cause is streptococcus, which is one of the pus-forming organisms. The ultimate cause of death is septicemia, which is a general infection of all the tissues in the body, the common every-day name for which is blood poison, death being caused by absorption of the toxins that the germs generate which break away from the main seat of the inflammation and spread to other parts of the body and become a general infection. Anybody that has a break of the skin or mucous membrane is susceptible should they come in contact with the germ. The conditions under which erysipelas is most usually carried from one person to another is by direct contact. If a man has poor health they are more susceptible than a man with high resistance. Any break or anything that lowers the vitality makes them more susceptible. After an operation a man's vitality is lowered, and if he comes in contact with an infection the organism is more likely to grow and develop. The idiopathic form of erysipelas is an old term that we used when we didn't know anything of what caused it. We would just put it down idiopathic. It was merely a term used where we didn't know. Erysipelas is manifested in different degrees, some being more superficial than others, but all of them involve the skin; they are deeper or superficial, but always involve the skin. I attended Mr. Bell up to the time of his death and went in the same room where he was sick, but never caught the disease. Most physicians, in attending contagious or infectious diseases like that, use the ordinary precautions; we never touch the patient if we can help it, and a great many of them use rubber gloves and wash their hands in antiseptic before or shortly after leaving the room.

"Supposing that a physician is in attendance upon a patient with erysipelas, and his custom is to wear glasses in the form of spectacles with guards that go over his ears, and supposing that in attendance upon that patient he has occasion to touch the patient from time to time and then uses his hands to take off and put on his glasses over his ears, and that in that act he makes an abrasion of the skin on his ear and subsequently contracts erysip-

elas, my opinion would be that he contracted the disease from the person that had it. If he broke the skin at the time, of course, that would make him more liable to contract the disease. If he had a break of the skin and touched a patient with erysipelas and then touched his ear, he would be liable to contract it. As I said a while ago, it is thought that a person cannot contract the disease unless they have a break in the skin. There is perhaps some difference between doctors in their theories. It is held by some authorities that a wound is not necessary (among them Dr. Osler, one of the recognized authorities), but by the majority that it is. All this difference between doctors is more from clinical experience, but a great deal of it is theory. One doctor might have a theory that you contract it by scratching your ear, and that is his theory, and another might have a theory that you blow your nose and rupture something and contract it, and that would be another theory, and another theory might be that you might cough and draw something into the throat and break the skin and contract it in the throat or mucous membrane. It is contracted that way sometimes. Yes, erysipelas more frequently develops through the mucous membrane. Dr. T. H. Smith was called in consultation with us. I think he treated his (Dr. Bell's) throat during his illness. Yes, it is possible that he may have contracted it through his throat. Dr. Smith is Dr. T. H. Smith, a doctor here in Atlanta, a throat specialist. The last time I heard from him he was in France with the boys. When I saw Dr. Bell his erysipelas was well pronounced over the major portion of the right side of his face and behind his ear, and his throat was involved. . . There is a tube that connects the throat and the ear, known as the eustachian tube. Were it not for the thin membrane of the ear-drum you could stick a tube back into his throat and blow the air out through the ear; there is a surface that has to be punctured. Were it not for the thin membrane constituting the ear-drum, which you can puncture, you could take a knitting needle and stick it from the ear clear into the throat. If a person is infected in the throat by erysipelas it would be possible for it to come out of that tube and manifest itself on the side of the face. It is just as possible and just as easy for the infection to go from the outside through that tube into the throat as the other way round."

The plaintiff's witness, T. M. Robinson, the father of the patient

treated by Dr. Bell, testified that in attending the patient Dr. Bell used the serum treatment, giving hypodermic injections, and in this way came in close contact with and handled the erysipelas patient.

At the trial the only evidence submitted by the defendant consisted of the following questions and answers from the plaintiff's proof of death: "Question 7. State all facts regarding cause and circumstances of death. Answer. Erysipelas contracted from patient," together with the following portion of the statement made by the attending physician and furnished by the plaintiff as a part of the proof of death: "Q. When did he show the first symptoms of his final illness? A. May 20th, 1916. Q. What is the date of your first visit? A. May 24th, 1916. Q. Your last visit? A. June 17th, 1916. Q. What cause, in your opinion, operated to produce the disease or diseases of which he died? A. Followed an infection contracted *while attending* a patient."

A verdict for defendant was directed by the trial judge, and exception was taken.

*Smith, Hammond & Smith,* for plaintiff.

*W. Carroll Latimer,* for defendant.

JENKINS, P. J. (After stating the foregoing facts.) A few words might properly be said in elaboration of subdivision (*b*) of the fifth paragraph of the syllabus, it being borne in mind, however, that the construction which is there assumed to be the meaning of the pleadings is not that which we have in fact held to be the only proper and necessary one. In point of fact, there is no direct or specific evidence tending to show that the fatal infection might have been contracted from germs collected upon the glasses and which entered the wound or scratch upon the ear at the time the abrasion occurred, but construing the evidence along this line most favorably for the plaintiff, and conceding that such might reasonably be within its purport, it is also true that from the plaintiff's own evidence it is plainly shown that had the scratch occurred free from all concurrent contamination, the assured, in subsequently handling and bringing himself within immediate contact with the erysipelas patient with such an exposed abrasion might readily and easily have contracted the disease in this way. If the disease was contracted by reason of such subsequent volun-

tary exposure, there would be no liability under the policy. Thus, since the plaintiff has shown by his own evidence that there were two reasonable and likely theories as to how the disease might have been contracted from the scratch upon the ear, assuming now that it in fact originated at the point of abrasion, and since there is no testimony whatever of any character which tends in any way to throw light upon the question as to which of these two theories thus presented was in fact the more probable, it is our opinion that the plaintiff has failed to carry the burden devolving upon him. Had the evidence been disputed as to the existence of the latter of the two reasonable theories, or had there been any conflict in the evidence as to which of these two reasonable theories was in fact the more probable, it could not have devolved upon the judge to determine such an issue; but since the plaintiff himself has presented both theories, and since there is no evidence, and therefore no conflict, as to which of the two theories thus presented is the more probable, it was not error to direct a verdict on the theory that the burden resting upon the plaintiff had not been met.

    *Judgment affirmed. Stephens and Smith, JJ., concur.*