## 14662.   ROBERTS *v.* ALLEN.

1. The contract disclosed by the plaintiff's evidence and upon which he relied for a recovery was not invalid for any reason alleged in the defendant's motion for a new trial. There was no fatal variance between the allegata and the probata. The evidence authorized the verdict.
2. There was no error in overruling the ground of the motion for new trial by which it was contended that the contract was unenforceable under the statute of frauds.
3. The court did not commit any material error in the admission or rejection of evidence.
4. There was no cause for a new trial in the refusal of any of the requests to charge, nor was there error in overruling the motion upon all grounds.

DECIDED FEBRUARY 25, 1924.

Complaint; from Fulton superior court—Judge E. D. Thomas. March 24, 1923.

Application for certiorari was denied by the Supreme Court.

. A. S. Allen, in an action against J. F. Roberts, obtained a verdict for $6,250. The defendant excepts to the overruling of his motion for a new trial.

The plaintiff alleged: that on January 2, 1920, he was appointed a special tax investigator by the State tax-commissioner, under the authority "contained in the act of 1919" (see Ga. L. 1919, pp. 55, 56) ; that under his appointment he was to receive a commission on such back ad valorem taxes due to the State of Georgia as should be collected through his efforts; that he was given authority to contract with certain counties, including the county of Camden, for the purpose of securing the proper return and collection of back taxes due to the counties, the commission to be paid to him by the State to be the same as that fixed respectively in his agreements with the counties; that in the latter part of the year 1920, in pursuance of his contract with the State tax-commissioner, he began an investigation in Camden county with a view of collecting back taxes due to the State of Georgia and the county of Camden by certain heirs of Mrs. Carnegie, and at the same time entered upon negotiations with a view of making a contract with the authorities of that county, for the purposes indicated above; that after he had devoted considerable work "to said investigation and negotiations," "the defendant herein, who was also employed by the State for making tax investigations and collections, on commissions, went to Camden county and took up the investigation of

this same matter" (that is, the collection of taxes supposed to be due by the parties above mentioned) ; that the plaintiff, upon learning of the conduct of Roberts, complained to the State tax-commissioner, calling his attention to the fact that "petitioner had commenced said investigation under the authority conferred upon him by his appointment, and that Camden county was in the territory assigned to him," and the tax-commissioner suggested that the plaintiff and the defendant "make some arrangement by which they would agree to divide the commissions accruing from the collection of said tax in the event a collection was made, and co-operate in said matter." The remaining allegations of the complaint were as follows: "9. Acting upon this suggestion of the State tax-commissioner, petitioner, on February 3, 1921, took the matter up with the defendant, informing him of the facts hereinbefore related,—that is, that petitioner had commenced said investigation before the defendant had done anything on it, and was really handling the matter, and that Camden county was within the territory assigned to petitioner, and also informing him of the suggestion to divide the commissions, and petitioner and said defendant did agree that they would co-operate in the matter of the collection of the taxes due by said parties, and would divide the commission accruing in said matter equally between petitioner and said defendant. 10. Thereafter the investigation which had been begun and conducted as hereinbefore stated resulted in the collection of taxes from said Carnegie heirs in the amount of $37,500, from which said defendant collected and received commissions amounting to $12,500. This was some time the latter part of February, 1921, and petitioner then asked said defendant for his portion of said commission, or one half of said commission, that is $6250, according to their agreement and contract, and said defendant put petitioner off from time to time on various excuses, and finally, upon petitioner's insisting upon his portion of said commission, the said defendant refused to pay him the same, and has neglected and failed to pay petitioner the amount due him as aforesaid." The record does not show that the sufficiency of the petition was tested by demurrer.

The contract of January 2, 1920, between the plaintiff and the tax-commissioner, which was introduced in evidence, contained, among others, the following stipulations: "He [the defendant] is

also authorized and empowered to collect . . any back ad valorem taxes not on the tax digest for the year 1919 and preceding years. For the collection of any such back ad valorem taxes he shall receive a commission upon the part accruing to the State of 15 per cent. ;" "said special tax investigator is also authorized to contract with the county authorities of any county which may be assigned to him by the State tax-commissioner, for compensation for services rendered in securing proper returns for ad valorem taxes, on the basis of a per cent. of the taxes accruing to such county from his efforts, and shall receive the same percentage of the amount accruing to the State." A certificate signed by the State tax-commissioner was attached to the contract assigning to the plaintiff several counties, including the county of Camden. The defendant, however, introduced a second contract between Allen and the State tax-commmmissioner, dated December 31, 1920, which did not purport to assign any particular counties to him, and in which the only clause having reference to the collection of ad valorem taxes accruing to the State was as follows: "For his [plaintiff's] services in the investigation of unreturned property for ad valorem taxes he shall receive the same commission for the State's part of such taxes as shall be allowed him by the county authorities on the amount of taxes accruing to the county as the result of his investigations."

The defendant Roberts also had been appointed as a special tax investigator under a contract of March 29, 1920. It does not appear that any particular counties were assigned to him, but he was authorized generally to make contracts with counties for the purpose of securing the return of property which had been previously omitted from the returns, and it was agreed that for his services in procuring the collection of back ad valorem taxes to the State he should receive for his commission "the same percentage as he may be paid by the county authorities on the amount which accrues to the county as a result of his investigations and efforts." A further clause of the contract was as follows: "This contract of employment, being personal on account of the confidence imposed in the said J. F. Roberts and his special fitness for this line of work, is not transferable, and it is understood that the work is to be carried on by him in person." This clause was amended on May 20, 1920, by the addition of the following: "He

[Roberts] may, however, employ such clerical assistance as may be necessary to enable him to carry out his work under this contract." An extract from the minutes of the county commissioners of Camden county discloses the making of a contract between the county and Roberts on January 14, 1921, by the terms of which Roberts was employed "to collect all back taxes found due the county by any individual, or corporation, or partnership, for 7 years back, . . he to bear all expenses in the collection of same," for an agreed commission of 33-1/3 per cent.

It is undisputed that Allen had never procured any contract with the county, although it appeared from the evidence that he had entered the county and performed some service with a view of procuring the return of property which should have been returned by the Carnegie heirs, and of collecting the taxes due thereon to the State and the county. This was in the latter part .of 1920. He had deferred any effort at making a contract with the county until after certain changes in the personnel of the board should be made at the beginning of the succeeding year. It further appears that on January 11, 1921, when he learned that Roberts had begun working in the same county, he complained of the conflict to Mr. Fullbright, the tax-commissioner, who soon thereafter suggested a combination of their efforts, with a division of fees. The commissioner was a witness upon the trial, and testified that he had received a letter from some person indicating the propriety or necessity of the services of a special investigator in this county, and that, overlooking for the moment his assignment of the county to Allen, he showed this letter to Roberts, with the suggestion that Roberts might undertake the work. He seems to have assumed the principal responsibility for the conflict, and had desired, for the sake of harmony among those working in his department, that the parties here at issue should cooperate with reference to the particular undertaking and share with each other the commissions to be earned. Allen testified that in pursuance of the suggestion of the tax-commissioner he went to Macon on February 3, 1921, where he had learned that Roberts could be found, and approached him upon the subject. His version of what occurred at this meeting is contained in his testimony as follows: "I said, 'Well, Mr. Fullbright suggested that we get together and furnish each other with any information we have, and

divide the commissions and work together; if we start anything like this, it will probably result in the State and county and any of us not getting anything.' And he said he would be glad to do so; he didn't know I had been down there and the county had been assigned to me, and it was perfectly all right and agreeable to do that. We then exchanged some information. I showed him some information that I had drawn off down there, and he showed me a letter from Mr. Page, superintendent, denying the liability of the Carnegie heirs, and I told him at the time that I knew there were some taxes coming from the heirs of that trust fund, as some of them were residents of Camden county; that much I was certain of. Then we discussed matters in a general way, as we do in checking up matters of that kind. Well, when I got to the point with Mr. Roberts about dividing the commissions he said he would be glad to do it. I said we would divide the commissions equally, we would pay our own different expenses, and such as that, and divide the commissions equally. I agreed to that in the Hotel Lanier. I had made a contract with him in good faith to work and cooperate together with him in the collection of these taxes. Under my contract I was to help him do that work."

The testimony of Roberts in regard to the conference at Macon was in part as follows: "I certainly did not make any agreement with Mr. Allen in Macon, at the time he stated, with reference to the division of my commissions. On February 3, 1921, I had completed the work in connection with these taxes. I had a check at that time, and showed it to Mr. Allen. It was a cashier's check for $37,500. That was the amount that we had agreed on as covering the taxes of the Carnegie estate. I showed Mr. Allen the check on February 3, 1921, at the Hotel Lanier. There was no further work to be done in the collection of these taxes after that time. That was the first conversation I had ever had with Mr. Allen on any subject, except to acknowledge an introduction in Greensboro. These $35,500 [$37,500?] of taxes were for the years 1918, 1919, and 1920—three years. That amount—$37,500 —was for both county and State taxes. It came to me with a cashier's check from Judge Conyers, and through me to the Copeland National Bank of Greensboro, Ga., through which it was cleared; after which I settled with the State and county. I collected them, and paid the part, after deducting my commissions,

to the county of Camden, and the State its part. That money came through me. On February 3, 1921, Mr. Allen came to me in the Hotel Lanier, and said, 'Mr. Roberts, I want to speak to you.' He said that he had talked with the tax-commissioner about my going into the counties where he had been assigned, and that Mr. Fullbright suggested that we get together and co-operate in the collection of the taxes. It was at that time that I said to Mr. Allen, 'I can't conceive of the necessity of cooperation. I already have my check for it;' and I showed Mr. Allen the check. That was about the sum and substance of our conversation; and I told him that I didn't think Mr. Fullbright had a right to make that suggestion, and that I wasn't going to pay him anything. That is approximately all that was said; there may have been some other little indirect statements. Mr. Allen said that Mr. Fullbright had given him the territory, and had not any business to send me there. He said he would take the matter up with Mr. Fullbright."

Allen, in rebuttal, denied that the check had been shown to him. The check was not in evidence and its date was not shown; but a ledger sheet from a bank at Greensboro, Georgia, was introduced by the defendant and showed that the check was deposited for collection on February 16, 1921. Allen testified to numerous efforts on his part after February 3 to cooperate with Roberts, suggesting that they go to Camden county together for the purpose of continuing and concluding the matter undertaken, but that Roberts had repeatedly put him off and would decline any discussion of the matter, usually assigning as a reason that a member of his family was ill at a hospital and needed his attention. The evidence of Allen authorized the conclusion that at no time did Roberts repudiate the agreement or decline to be bound by its terms until Allen learned that the collection had been made and demanded of Roberts his share of the commissions which Roberts had retained, and that Allen had been ready and willing at all times to perform his part of the agreement which he claimed had been made. These things were denied by Roberts, except his refusal to pay.

*Dorsey, Brewster, Howell & Heyman, Mark Bolding,* for plaintiff in error.

*Branch & Howard,* contra.

BELL, J. (After stating the foregoing facts.) 1. Numerous grounds of the amended motion for a new trial being but amplifications of the general grounds will be considered in connection therewith. One of the contentions is, that the evidence shows that the agreement of February 3 was without consideration because it appeared that the contract between Allen and the State tax-commissioner of January 2, 1920, was superseded by the subsequent contract of December 29th, and that Allen could have had no claim or interest in commissions to be earned in the county of Camden unless he had procured a contract with the county; and that Roberts who had the only contract with the county was thus the only person having a right in the subject-matter of the agreement of February 3. It is therefore insisted that Allen gave nothing, having nothing to give, as a consideration for this agreement.

Irrespective of the contracts between Allen and the State, the averments in paragraph 9 of the petition, indicative of an intention on the part of the plaintiff to lay as a consideration the fact of his contract of January 2, together with some service performed thereunder, do not exclude the further consideration arising in his alleged promise to cooperate with Roberts in carrying on the work which the latter had begun under contracts by which Allen was barred from an independent project. "All pleadings must receive a construction in accordance with the natural intendment of the words and language used, and, as a general rule, must be construed most strongly against the pleader (*Athens Mfg. Co.* v. *Rucker*, 80 *Ga.* 291, 4 S. E. 885) ; but if a petition be subject to two constructions and there be no demurrer thereto, and the case has proceeded to trial and resulted in a verdict, then, in determining whether the case has been proved as laid, that construction will be adopted which is most favorable to the assertion of a cause of action in the plaintiff's favor. *Payton* v. *Gulf Line Ry. Co.*, 4 *Ga. App.* 762 (62 S. E. 469)." *Bell* v. *State Life Ins. Co.*, 24 *Ga. App.* 497 (5) (101 S. E. 541).

Nor do we think that the fact that all of the services which contributed to the collection may have been done by Roberts would preclude a recovery by Allen, if the agreement between them was made as alleged. If the defendant agreed to accept the services of the plaintiff, he could not thereafter defeat the agreement and

deny liability merely because he elected to proceed alone, if the plaintiff was ready and willing to perform, as might have been inferred from the evidence. The conclusion is not demanded that the taxes were collected before February 3, when the conference at Macon resulted as claimed by the plaintiff in the agreement upon which he relies. Where one is working upon a project and, without knowing that it is near consummation, agrees with another that they will cooperate in concluding it, thus taking the risk of allowing to the other a share of the earnings out of proportion to the service that may be rendered, he cannot escape liability merely because it turns out that the services of the other were not needed.

The plaintiff in error contends that there was no reason impelling him to make the agreement. While the fact that the State tax-commissioner may have suggested cooperation between the parties would not alone afford a consideration, it might offer a motive for entering the agreement upon a slight consideration. Roberts' appointment was made by this officer, and the contract embodying the appointment provided that it was terminable at any time by either party giving the other party five days' written notice. Assuming that the commissioner could not have terminated the contract so as to deprive Roberts of the privilege of proceeding in the county of Camden or in any particular county with which he may have contracted, the refusal of Roberts to concur in the suggestion of the officer appointing him, that the parties hereto for the sake of harmony should cooperate in the particular matter, might have been regarded by Roberts as imperiling his right to proceed in other instances, and he might thus have been induced to enter the agreement with Allen upon terms which he did not regard as advantageous, but not lacking altogether in consideration. Mere inadequacy of consideration alone will not void a contract. Civil Code (1910), § 4244. The promise of Allen to help or cooperate in doing the work was a sufficient consideration for the agreement of Roberts to accept and pay for the service. Civil Code (1910), §§ 4242, 4246; *Bing* v. *Bank of Kingston,* 5 *Ga. App.* 578 (2) (63 S. E. 652).

With reference to a further contention, we think that the agreement as shown by the evidence of the plaintiff was not void for uncertainty. That is certain which may be made certain. Refer-

ence was had to the defendant's appointment and his contract with
the county of Camden. In these were to be found the thing to
be done which the plaintiff agreed to cooperate in doing. What-
ever was reasonably necessary to be done in execution of the pro-
jected undertaking by Roberts Allen agreed to help in accomplish-
ing. Nor does the agreement appear unilateral.

Was there any material variance between the allegations and the
proof? If the plaintiff's right to a recovery had depended upon
his contract of January 2 with the State tax-commissioner, his
case would necessarily fail because the contract of December 29,
not referred to in the petition but shown by the evidence, super-
seded the former one. It is distinctly disclosed, however, by the
petition, that the plaintiff had never made any contract with the
county in pursuance of his contract of January 2 with the State,
and that his cause of action is laid in the contract with the de-
fendant of February 3. We think that his testimony tended to
support the petition in respect to this agreement, and thus we
cannot concur in the contention of the learned counsel for the
plaintiff in error, that upon this point there is a material and fatal
variance. It is, of course, true that a plaintiff must recover upon
the cause of action as laid in his petition, and a verdict in his
favor is illegal when the evidence fails to support the cause de-
clared on, even though another and different cause of action ap-
pear from testimony admitted without objection. "No plaintiff
can recover upon a cause of action, however just or well sustained
by proof, which is totally distinct and different from that alleged
in his declaration, and this is so although palpably irrelevant evi-
dence may have been received without objection." *Central Rail-
road & Banking Co.* v. *Cooper,* 95 *Ga.* 406, 407 (22 S. E. 549);
*Burdette* v. *Crawford,* 125 *Ga.* 577 (2) (54 S. E. 677). But "a
different rule would apply when evidence admitted without objec-
tion could have been rejected as not conforming to the allegations
as laid, but in fact related to the cause of action declared on. In
such a case our courts have repeatedly held that a party waives
his objections to the pleadings by allowing such evidence to go
to the jury without objection; the reason for this just rule in such
a case evidently being that had objection been made, the party
tendering such evidence might have amended his pleadings so as
to conform thereto. One of the principal functions of amendments

is to conserve this right. *Haiman* v. *Moses*, 39 *Ga.* 798 (3) ; *Savannah, F. & W. Ry.* v. *Barber*, 71 *Ga.* 644 (2 *a*) ; *Gainesville & Northwestern R. Co.* v. *Galloway*, 17 *Ga. App.* 702 (4) (87 S. E. 1093)." *Napier* v. *Strong*, 19 *Ga. App.* 401 (2), 406 (91 S. E. 579).

We think that any variance appearing between the allegata and probata was not so wide that it could not have been cured by amendment, that is, that an amendment if offered for that purpose would not have been objectionable as adding a new and distinct cause of action. See *Napier* v. *Strong*, supra, and cases therein cited. This being true, the variance is not cause for a new trial where the evidence was admitted without objection. We have not overlooked the fact that the plaintiff alleged an agreement by which the parties would cooperate in doing certain work, while the evidence would tend to show that there was no cooperation. There is some similarity to a case where one, after contracting to buy goods, countermands the order; in which an action on account for the goods will not lie, but the seller must sue as for a breach of the contract (*Oklahoma Vinegar Co.* v. *Carter*, 116 *Ga.* 140 (2), 42 S. E. 378, 59 L. R. A. 122, 94 Am. St. R. 112) ; but we have reached the conclusion that the doctrine of the case last cited and the many others to the same effect is not applicable to the case now under consideration. The principle governing a case like the present one would appear more analogous to that found in the Civil Code (1910), § 3588, in which it is provided: "When the contract is for a year, and the employer discharges the agent before the end of the year, the agent may either sue immediately for any special injury from the breach of the contract, or, treating the contract as rescinded, may sue for the value of the services rendered, or he may wait till the expiration of the year and sue for and recover his entire wages." If the evidence of the plaintiff be true, he appears to be entitled to the third of the remedies provided by this section. This is the remedy he elected in his suit. He waited until the termination of the period of the engagement, and then sued upon the contract as was his right. See *Rogers* v. *Parham*, 8 *Ga.* 190; *Perdue* v. *Cason*, 22 *Ga. App.* 284 (96 S. E. 16). Certainly he was not, as a matter of law, required to sue as for a breach of the contract because of a failure on the part of the defendant to cooperate or to allow him to help in the execution of

the projected undertaking, when the defendant did not notify the plaintiff that he would repudiate the agreement or refuse to be bound by its terms until after the time for performance had passed, and the only breach of which the plaintiff was actually put upon notice, according to his evidence, was the defendant's refusal to pay.

It is further insisted that, because of the stipulation in the contract between Roberts and the State that it was made on account of the confidence reposed in Roberts, and was not transferable, but was executed with the understanding that the work was to be carried on by Roberts in person, the agreement which Allen would enforce is invalid, unenforceable, "contrary to public policy, and void." We do not see anything in the agreement which would violate the law. The question is merely whether Roberts, in agreeing with Allen, violated the express and personal stipulations contained in the agreement he had made with the State. "Whatever one may do himself may be done by an agent, except such personal trusts in which special confidence is placed on the skill, discretion, or judgment of the person called in to act; so an agent may not delegate his authority to another, unless specially empowered to do so." . Civil Code (1910), § 3571. See also *Tifton &c. Ry. Co.* v. *Bedgood,* 116 *Ga.* 945 (43 S. E. 257); *Adair* v. *Smith,* 23 *Ga. App.* 290 (5) (98 S. E. 224). The agreement between Roberts and the State could not have been assigned, but Allen is not relying upon a transfer, and is not proceeding against the State. If he were seeking to do either, of course he should fail. The fact that Roberts himself might have violated his civil agreement with the State, and thus have imperilled his right to be paid, would not necessarily preclude his personal liability to another whom he engaged to cooperate with him in executing the work he had undertaken.

"A contract will be construed as made for a legal, rather than for an illegal purpose; and the more especially when such contract is attacked by a party thereto who has been benefited thereby." *Virginia Bridge Co.* v. *Crafts,* 2 *Ga. App.* 126 (3) (58 S. E. 322). "'Courts hold themselves bound to the observance of rules of extreme caution, when invoked to declare a transaction void on grounds of public policy; and prejudice to the public interest must clearly appear before a court will be warranted in pronouncing

the transaction void on this account. It is not to be lightly inferred from facts and circumstances of doubtful import and meaning, or which may admit of different construction, one consistent with and the other opposed to unquestioned policy.' *Smith* v. *DuBose,* 78 *Ga.* 415 (3 S. E. 314, 6 Am. St. Rep. 260)." *Virginia Bridge Co.* v. *Crafts,* supra. But another and important consideration here is the fact that that tax-commissioner appears to have consented to what was done, and thus to have waived his requirement that the work he expected of Roberts should be done by him personally. If the State tax-commissioner had denied the right of Roberts to compensation, because of the agreement with Allen, would it not have been a sufficient reply that the commissioner had given his consent to what had been done, and that Roberts had acted thereon?

We do not know of any requirement that the contracts (not referring to the act itself of appointing) between the commissioner and the special tax-investigators should be in writing, and his subsequent agreement upon which both the parties acted, if the plaintiff's testimony is true, would appear to have had the effect of a modification to that extent of his original requirement that the services of Roberts should be personal. Both the plaintiff and the defendant had been appointed as special tax-investigators. The failure of Allen to procure a contract with Camden county did not deprive him of his general official character, but merely affected his right to commissions *from the State* for work in that county. The tax-commissioner had before him two officers of like authority, and, without affecting the interests of the State, could very well agree to waive the stipulation referred to, in order that one might assist in the work of the other, he allowing them to settle among themselves the mere detail of a division of fees. See *Bynum* v. *Knighton,* 137 *Ga.* 250 (73 S. E. 400, Ann. Cas. 1913A, 903).

This will conclude a consideration of the general grounds of the motion for new trial and of those special grounds which logically fall within the same class. We cannot agree that the verdict should be set aside on the ground that the contract sought to be enforced was illegal or contrary to public policy, as contended, nor can we hold that the verdict was wholly without evidence to support it.

2. In one of the grounds of the motion for new trial the "mov-

ant contends that the alleged contract of February 3, 1921, which forms the basis of this suit, is void and unenforceable because it is a contract for the sale of goods, wares, and merchandise to the amount of $50 or more, and is not in writing, signed by the party to be charged therewith, and is within the statute of frauds, and there are no facts or circumstances shown to take it out of the operation of the statute of frauds." This question is raised for the first time in the motion for a new trial. "Where the statute of frauds was not pleaded, and there was no demurrer, motion for nonsuit, or objection to testimony, so as to invoke a ruling in the court below on that subject, this court will not grant a new trial on the ground that the verdict.is contrary to law because it appears that the contract sought to be enforced should have been in writing. *Johnson* v. *Latimer,* 71 *Ga.* 470 (3)." *Bridges* v̇. *Williams,* 148 *Ga.* 276 (96 S. E. 499). But irrespective of whether this rule of practice would be applicable where the point is made in a special ground of the motion, the contract relied on does not appear to fall within the particular provision of the statute which the movant would invoke. There is no insistence that any other provision of the statute is applicable.

3. Two of the grounds of the motion complain respectively of the admission and rejection of evidence. It is insisted that the court erred in allowing in evidence on behalf of the plaintiff a written memorandum drawn from the "tax-books" of Camden county by the chairman of the board of equalizers and furnished to the plaintiff, purporting to show the tax returns of the persons referred to in the petition. The objection was urged that the evidence was hearsay, and that a certified copy of the return would have been the best evidence. The purpose of the evidence apparently was not to establish the correctness of the particular return, but rather to illustrate that the plaintiff had undertaken the investigation. While this fact could not amount to a consideration for the contract sued on, it was not improper to admit the evidence as a part of the history of events leading up to the making of the alleged contract of February 3. "When, in a legal investigation, information, conversations, letters, and replies, and similar evidence are facts to explain conduct and ascertain motives, they are admitted in evidence, not as hearsay, but as original evidence." Civil Code (1910), § 5763. But even if we have misconceived the pur-

pose and relevancy.of this evidence, it certainly could have done no harm on the grounds urged in the objection. Whether the returns were correct or incorrect was in no way involved. Irrelevant evidence is not necessarily good ground for a new trial. Moreover, it is not assigned that the evidence was not relevant.

The following testimony of the defendant was excluded: "I wired to Pittsburg and got the number or the total value of the stocks and bonds held by the Fidelity Trust & Banking Co., of Pittsburg, Pennsylvania, as agents for the trustees of the Carnegie estate," the objection thereto being that the telegram was in writing and that the writing was the best evidence. The defendant testified: "I don't really know where the telegram is now." This would not seem to be a sufficient foundation for the admission of secondary evidence, but, assuming it to be sufficient, there was no injury in excluding the evidence. It could only have shown the services of Roberts, about the rendition of which no issue was made.

4. Three of the grounds of the motion for a new trial except to the refusal of requests to charge. One request was for a charge that "In this suit plaintiff contends that defendant made a verbal agreement to divide the fees earned by defendant from the collection of certain taxes paid by the trustees of the Carnegie estate. Defendant denies having made any such agreement, and further claims that there was no reason impelling him to such agreement, and that there was no consideration for any agreement to divide his fees with plaintiff. If you should believe from the evidence in the case that defendant did not agree to divide his fees with plaintiff, you should find a verdict for the defendant in the case. If you should believe the contention of the plaintiff that defendant did agree to divide his fees with plaintff, but that such agreement was made after defendant had completed the work for which he had been employed, and that defendant had already earned the fees, paid or to be paid him, and that there was no legal consideration for the alleged agreement, then I charge you that such alleged agreement would be in law a mere nudum pactum, revocable at the will of the defendant, and not legally enforceable against him, and I charge you that in such event you should find a verdict for the defendant." It is assigned that the court declined to give the charge as requested "except in so far as it related to a denial by

the defendant that he made the alleged contract." Assuming that the defendant's answer raised an issue as to the consideration of the contract relied upon (*Doggett* v. *Simms,* 79 *Ga.* 253 (3), 4 S. E. 909; *Martin* v. *Nichols,* 127 *Ga.* 705, 56 S. E. 995; *Citizens Bank of Roswell* v. *Reese,* 145 *Ga.* 110 (2), 88 S. E. 570; *Western & Atlantic R. Co.* v. *Sellers,* 15 *Ga. App.* 369, 83 S. E. 445)´, that the assignment of error is sufficient, and that the request was in proper form and abstractly correct, we do not think that so much of the request as was refused was pertinent to the issues as made by the evidence. The jury could not have applied it, unless they believed the testimony of Allen with reference to the making of the agreement of February 3 and at the same time should have accepted the testimony of Roberts that he then and there told Allen that the work had been entirely completed and that there was no occasion or possibility for cooperation.

The respective versions of the parties with respect to what occurred in their conference on February 3 which resulted, as the plaintiff contends, in the making of the contract sued on, as contained in the testimony of each respectively, were so directly opposed that the jury could not reasonably have accepted the one in part and the other in part. The opportunity was not presented, under the issues, for an application of the rule laid down in *Sappington* v. *Bell,* 115 *Ga.* 856 (42 S. E. 233), that "a jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration." The testimony of each of the parties was necessarily to be considered as a whole. They were at variance at every material point. The conflict was direct and acute. If they believed that the contract was made as contended by the plaintiff, they could not have believed, as contended on the other hand by the defendant, that the plaintiff was informed that the work had been completed and that there was no reason or consideration for the agreement. We do not think that the proposition as stated in the request would be applicable if the agreement was made in fact, unless it could also be true that the plaintiff was informed of the completion of the work as the defendant contended. If he had performed it but kept it a secret at the time of the alleged agreement, he could hardly take

advantage of that fact to assert that the agreement was a nude pact.

A further request was that the court charge as follows: "The law places upon the plaintiff the burden of proving to the jury, by a preponderance of the evidence, his contention that such agreement was in fact made. If all of the evidence adduced upon this trial, taken together, should fail to produce upon your minds a balance of belief, based upon the preponderance of the evidence, that the alleged agreement was in fact made, then it would be your duty to find for the defendant, for an even balance of doubt or belief in your minds, based upon an even balance of the evidence, in your judgment, would not overcome the burden of proof imposed by law upon the plaintiff, and would not authorize a verdict for the plaintiff." If the weight of the evidence is equally balanced upon an issue as to which the plaintiff has the burden of proof, he would not be entitled to prevail. Assuming that a refusal of a request so to charge would be error, notwithstanding the fact that the court correctly charged section 5731 of the Civil Code, defining preponderance of evidence, we are not prepared to hold that the request would have imparted more light to the jury on the significance of the preponderance of the evidence, or the meaning of burden of proof, than was given by the court in charging the code section. The refusal of this request was not cause for a new trial.

The third request refused was that the court charge as follows: "The requirements of a legal contract in Georgia are not met by a mere understanding on the part of one of the parties that an agreement has been made. To constitute a legal, binding, enforceable contract, it must appear that there has been a mutual meeting of the minds of the contracting parties. In this case the plaintiff contends that he verbally proposed to defendant that defendant divide with plaintiff the fees paid or to be paid to defendant, and that defendant agreed to the proposition. This contention is denied by the defendant. If you should believe from the evidence that plaintiff had a conference with defendant on the subject, and undertook to express to defendant the above-stated proposition, but that the defendant either did not hear or did not understand the proposition and did not agree to the proposition, then I charge you that the defendant would not be liable in this case, even though the plaintiff may have intended and attempted to convey the proposition

to defendant, and even though plaintiff in good faith may believe his proposition to have been understood and agreed to by the defendant. In that event, it would be your duty to find for the defendant." This request was not pertinent. The defendant did not contend that he failed to hear and comprehend everything said to him by Allen in Macon. No such issue was presented by the evidence.

We have most carefully considered every ground of the motion for a new trial. The case is a close one, both upon the law and the facts, but we do not find any sufficient cause in the record for setting aside the verdict.

The validity of the underlying contracts between the parties respectively and the State tax-commissioner is not drawn in question by either party. This decision therefore assumes them valid, without any holding in reference thereto. The issue which we conceive to be presented by the record arises upon the claim of the contract of February 3 between the plaintiff and the defendant. We have rendered our decision accordingly.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*